IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

Silvana Pajor Flores

      Plaintiff,

v.

American Income Life Insurance Company

      Defendant,

---

**COMPLAINT AND JURY DEMAND**

---

COMES NOW, Plaintiff, Silvana Pajor Flores, by and through her counsel, Attorney Maria Ruskiewicz, respectfully submits this Complaint and Jury Demand against Defendant, American Income Life Insurance Company, and alleges and avers as follows:

**Jurisdiction and Venue**

1.  Plaintiff brings this action pursuant to Title VII of the Civil Rights act, 42 U.S.C. §2000e et seq. ("Title VII"), and C.R.S. § 24-34-401 et. seq.

2.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1343(a)(4), 1367, 42 U.S.C. 2000e-5, and the aforementioned statutory

provisions.

3. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in Colorado, and because Defendant has transacted business in Colorado that has given rise to this cause of action.

4. Venue is proper in the United States District Court for the District of Colorado under 42 U.S.C. § 2000e-5(f)(3), because the relevant employment records are kept in Colorado, decisions averse to Plaintiff's employment that are the subject of this action were made in Colorado, because Plaintiff worked in Colorado at the time of Defendant's unlawful employment practices, and because Plaintiff would have worked in Colorado if not for Defendant's unlawful employment practices.

**Exhaustion of Administrative Remedies**

5. Plaintiff has timely invoked and fully exhausted all administrative remedies applicable to this action.  Plaintiff received an Equal Employment Opportunity Commission "Right-to-Sue Letter" on May 10, 2016.

**Parties**

6. Plaintiff, Silvana Pajor-Flores, is an Argentinian female with a perceived disability who was retaliated against.  She is a lawful permanent resident and currently

resides in the State of Colorado.  At the time of the incidents that gave rise to this action, Plaintiff was resident of the State of Colorado, residing at 7515 Woody Creek Drive, Colorado Springs, CO 80911.

7.   Defendant, American Income Life Insurance Company, is an insurance company incorporated in Indiana, operating out of Colorado and other states primarily engages in selling of policies and coverage.  Defendant's principal office address is not registered, but the registered agent is Division of Insurance, 1560 Broadway, Denver, CO 80202.  At all-time relevant to this action, Defendant has been an employer as defined by the ADA and Title VII.

**General Allegations**

8.   Plaintiff incorporated by reference herein the allegations contained in paragraphs 1 through 7 of this Complaint and Jury Demand.

9.   Plaintiff was hired by Defendant, American Income Life Insurance Company, in August 23, 2013 in Colorado Springs, Colorado, and worked for the Defendant until she was unlawfully terminated on March 13, 2015 due to discrimination.

10.  Plaintiff was interviewed before being hired.  The Defendants held a 3 step interview telling candidates that promotions are based on performance and not on seniority or office politics.  Defendant showed a chart of income according to the different contract levels based on production and persistency.

11. Plaintiff was hired as a contract worker or W-9 status as a producer agent but could have been an employee based on Defendant's actions.  Either way because her position was sales and she could be a factual employee, this Court has proper jurisdiction and venue.

12. Plaintiff was hired onto team "West".  She was the only female and Argentinian on this team.  The teams are pyramid schemed.   Rich Correa pursuant then Mcquade then Peter Van Der West Huizen then Plaintiff.  At the time Plaintiff was hired, James Harding came on board and started on the same team and position as Plaintiff.

13. Plaintiff's mandatory start time was 8:00 am per Richard Correa.  Rich Correa made Plaintiff mandatorily make recruiting calls from 8:00 am until 11:00 am daily with no exceptions to build a sales team.  The start times and recruiting time are normally left to the discretion of the sales person, since the position's pay is based on production and persistency.

14. Trainees-who are the people that were recruited were taken by the sales person who booked them.  Plaintiff made recruiting calls daily to build her team.  Plaintiff's trainees were given in protest to James Harding by the command of Andrew Mcquade and Peter Van Der West Huizen.  Plaintiff had the highest amount of trainees for that position level. James Harding was given Plaintiff's recruits to build his team to get promoted faster for an increased in income. Because Plaintiff's recruits were taken from her in direct opposition of protocol,

James Harding was able to advance before Plaintiff.  Plaintiff but for discriminatory actions by the Defendant would have advanced pursuant to protocol before the males on her team.

15. Plaintiff was only given her recruits that were not sought after because of age or Hispanic accents or legal situations with prior employers and all females. Peter Van Der West Huizen specifically placed these recruits with Plaintiff in protest.

16. Plaintiff's from 2014 until unlawful termination had the highest production and persistency on her team.  Her average levels of 45-50 weeks of 52 weeks yearly. Production (the first payment from a new client) was calculated monthly for each team member. Persistency (the production that stayed on the books) was calculated monthly for each team member.

17. Each agent's production and persistence reports are called AP&P (agent's production and persistence report).  This with the agent's weekly report shows the number of appointments given the previous week, number of referrals collected, average household income, average ALP (annualized premium) reports that consist of policies sol and number of sales.  These reports were used for weekly meeting with Mcquade.  Based on these reports Mcquade always noted steady production and persistency levels with increasing numbers for Plaintiff.

18. During these routine meetings Plaintiff always inquired about how her recruits are being taken from her.  She would always bring up the unfair treatment of leads

and how the discriminatory actions, such as taking her recruits, taking her leads and taking her territories are affecting her advancements.

19. Production and Persistency are the basis for promotion and bonuses. For example, General Agent come with a 5% increase on personal production and larger overwrites. Agents are promoted based upon an achieved level of production to General Agent then to Master Agent and so on.

20. Plaintiff met the threshold for advancement in February or March of 2014, months prior to advancing as General Agent in October 2014. Not only was the advancement months late, but also conditional. Non Argentinians and males on team "West" with less production and persistency levels than Plaintiff were advanced prior to Plaintiff without conditions.

21. Shortly thereafter Plaintiff met the threshold for advancement to Master Agent but was not advanced. Male and non-Argentinian members on team "West" were advanced to Master Agent with lesser production levels than Plaintiff

22. During Plaintiff employment there were other teams. The other teams made sales separate of each other. Plaintiff requested to her supervisors to be transferred to another team because the women were treated equally on those other teams. Plaintiff was denied that request for the benefit of the males and non- Argentinian uppers on her team "West" making her superiors good money.

23. During Plaintiff's employment with Defendant, she was repeatedly subjected to racist or original or nationality, comments, jokes and slurs, by coworkers and

supervises alike.   Frequently the words "too fucking Mexican", "wet back" or if "she had to get a domestic violence to get her green card" in front of her, coworkers, superiors and other employees.  This was done by multiple staff members at once.

24. During Plaintiff's employment she was not allowed to go to conduct business representing American Income Life Insurance in other states because she was "too fucking Mexican" or female.

25. For example, in 2014 Rich Correa stated that there were sales to be had in Kansas.  Plaintiff was the first to go out there.  She purchased her KS producer license, invested in a rental property to set up shop with her team and built her leads.  When her leads were impressive around 120-150 leads (names and number of union members that requested benefits) she was demanded by Andrew Mcquade and Peter Van Der West Huizen during a meeting to give her leads to a Caucasian male coworker Andrew Kerr.  She was then demanded to take his leads and come back to Denver.  His leads were around 30 leads.  She lost that investment, time and again was not able to advance.

26. After the mandatory relocation back to Colorado she brought to her team leaders that she was concerned over the discriminatory actions and the Defendant stated Nebraska can be just as good as Kansas.  The purchase d her NE producer license and went.  She had no team, no leads and the market was vacant. During this time Hannah Helgeson witnessed the discriminatory placements of

Plaintiff.   The team would use her to build a great lead packet then demand that it be given to the team leaders for themselves or to assign to non-Argentinian males to ensure her low level agent title to keep kicking up money to them.

27. Plaintiff demanded to back to Kansas where she was one of the top 83 agents in the world at her level, expecting promotions and increased pay.  She was told she was too fucking Mexican and to get over it.  She was denied due to discriminatory actions.  Her promotions and income increase was given to Andrew Kerr.

28. James Harding another agent with less production and less persistency than Plaintiff got advancement tot General Agent before Plaintiff.  He didn't have to recruit and was given training for agents, just as all the other males.  Plaintiff was denied training.

29. Tyler Storie was also required before Plaintiff with less production and persistency and time.  Plaintiff was given another position to start up an Office with Tyler Storie in Colorado Springs.  This office relation came with un-coded teams' members.  Un-coded team members are not assigned to a sales agent.  Plaintiff had no sales team to build her pyramid up.  The later found out that Tyler Stories had coded team members that built his pyramid up.

30. Plaintiff worked 75-80 hours weekly and was told, it's not enough time.  That's why she didn't get promoted.  She was crazy that's why she didn't get promoted.  She was too fucking Mexican, that's why she didn't get promoted.  Only

discriminatory practices are why she didn't get promoted.

31. During Plaintiff's employment with Defendant she was repeatedly subjected to sex comments, jokes and slurs from coworkers and supervisors alike. Frequently they used the words "bitch, ignorant and stupid"," never hire females, they get pregnant or quit or have boyfriends, there's always something", and "never trust a female who bleeds for 5 days and doesn't die".

32. Plaintiff complained of the discrimination to coworkers and supervisors. She was retaliated against with a perceived disability. "You're just bi-polar", "straighten your mind', "you're crazy" and "You're insane", making a hostile work environment in retaliation.

33. There are at minimum 3 superiors and 1-2 coworkers continually discriminating against her daily since 2014 until unlawful termination.

34. In 2013-2015 Plaintiff brought this to the attention of her supervisors and asked to be promoted, not called names and to be allowed to conduct. She was told that she was "too fucking Mexican" or "you're just bi-polar" as a response.

35. Plaintiff received one action in February of 2015 in retaliation for complaining about the discriminatory actions to her supervisors. The protocol for disciplinary action was not followed. The accusation was boycotting the supervisor. This was prior to March 13, 2016 and when she had the highest production levels of the team.

36. During Plaintiff's employment, she was an exemplary employee, receiving

employee of the month and achieving continual high levels of production.

37. Plaintiff was constructively discharged on February 17, 2015 in retaliation for her continual attention to discriminatory practices by her employers, supervisors and co-workers and hostile work environment.

## CLAIMS FOR RELIEF

I. **Employment Discrimination on the basis of National Origin/Ancestry in Violation of Title VII of the Civil Rights Act**

38. Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 19 of this Complaint and Jury Demand.

39. Plaintiff, Silvana Pajor Flores, was subject to disparate treatment before of her protected class as an Argentinian.

40. Plaintiff's National Origin or Ancestry was either the sole reason or a motivating factor for the Defendant's decision to not promote Plaintiff, for Defendant's decision to place Plaintiff in an undesirable job assignment, and for the Defendant's decision to constructively discharge Plaintiff.

41. Defendant stated reasons for discharging Plaintiff were not the true reasons, but instead were to pretext to hide Defendant's discriminatory motivations.

42. Plaintiff was subjected to harassment, including offensive racial comments, racist jokes, and slurs because of her protected status as an Argentinian.

43. This conduct was sufficiently pervasive and severe to alter the conditions of Plaintiff's employment, and created an abusive working environment.

44. Both supervisors and coworkers contributed to the harassment.

45. Defendant knew or should have known about the harassment, because Plaintiff reported it, because supervisors participated in it, and because the slurs were in public, but Defendant failed to take any corrective or preventative action.

46. As a direct and proximate result of Defendant's actions Plaintiff has suffered damaged including emotional and psychological distress, loss of wages, loss of future earnings, loss of future wages, loss of benefits, loss of future benefits, loss of earning potential and loss of career advancement.

47. The unlawful employment practices complained of above were committed intentionally.

48. Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action, pursuant to 42 U.S.C. 2000e-f(k).


## II.    Employment Discrimination on the basis of Sex in Violation of Title VII of the Civil Rights Act


49. Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 30 of this Complaint and Jury Demand.

50. Plaintiff, Silvana Pajor Flores, was subject to disparate treatment before of her

protected class as a female.

51. Plaintiff's sex was either the sole reason or a motivating factor for the Defendant's decision to not promote Plaintiff, for Defendant's decision to place Plaintiff in an undesirable job assignment, and for the Defendant's decision to constructively discharge Plaintiff.

52. Defendant stated reasons for discharging Plaintiff were not the true reasons, but instead were to pretext to hide Defendant's discriminatory motivations.

53. Plaintiff was subjected to harassment, including offensive comments, jokes, and slurs because of her protected status as a female.

54. This conduct was sufficiently pervasive and severe to alter the conditions of Plaintiff's employment, and created an abusive working environment.

55. Both supervisors and coworkers contributed to the harassment.

56. Defendant knew or should have known about the harassment, because Plaintiff reported it, because supervisors participated in it, and because the slurs were in public, but Defendant failed to take any corrective or preventative action.

57. As a direct and proximate result of Defendant's actions Plaintiff has suffered damaged including emotional and psychological distress, loss of wages, loss of future earnings, loss of future ages, loss of benefits, loss of future benefits, loss of earning potential and loss of career advancement.

58. The unlawful employment practices complained of above were committed intentionally.

59. Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action, pursuant to 42 U.S.C. 2000e-f(k).

### III.    intentional sex-based wage discrimination under the Equal Pay Act of 1963 and Lilly LedBetter Fair Pay Act of 2009

60. Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 41 of this Complaint and Jury Demand.

### IV.    Employment Discrimination on the Basis of Disability in Violation of the Americans with Disabilities Act

61. Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 60 of this Complaint and Jury Demand.

62. Defendant publically stated Plaintiff suffers from bi-polar mental condition and insane mental condition.

63. Plaintiffs not currently diagnosed with any mental disorder.

64. Plaintiff was at all times able to perform the essential functions of the employment position that she held.  Plaintiff satisfied the requisite skill, experience, education, and other job-related requirements of her employment position, as shown by her nearly three-year employment with Defendant and her

historically outstanding performance reviews.

65. Plaintiff suffered adverse employment actions by Defendant including being prevented form promotions, being given undesirable job assignments, and being constructively discharged.

66. Plaintiff's perceived disability was the sole reason or motivating factor for Defendant's decision to take that aforementioned adverse employment actions.

67. Defendant stated reasons for discharging Plaintiff were not the true reasons, but instead were to pretext to hide Defendant's discriminatory motivations.

68. Plaintiff was subjected to harassment, including offensive comments, jokes, and slurs because of her protected status as a female.

69. This conduct was sufficiently pervasive and severe to alter the conditions of Plaintiff's employment, and created an abusive working environment.

70. Both supervisors and coworkers contributed to the harassment.

71. Defendant knew or should have known about the harassment, because Plaintiff reported it, because supervisors participated in it, and because the slurs were in public, but Defendant failed to take any corrective or preventative action.

72. As a direct and proximate result of Defendant's actions Plaintiff has suffered damaged including emotional and psychological distress, loss of wages, loss of future earnings, loss of future ages, loss of benefits, loss of future benefits, loss of earning potential and loss of career advancement.

73. The unlawful employment practices complained of above were committed

intentionally.

74. The unlawful employment practices complained of above were committed with malice, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendant to punitive damages.

75. Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action, pursuant to 42 U.S.C. 2000e-f(k).

### V. Employment Discrimination on the Basis of National Origin/Ancestry in Violation of C.R.S. 24-34-402

76. Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 56 of this Complaint and Jury Demand.

77. Plaintiff, Silvana Pajor Flores, was subject to disparate treatment due to her protected status as an Argentinian.

78. Plaintiff's National Origin/Ancestor was the sole reason or motivating factor for Defendant's decision to take that aforementioned adverse employment actions.

79. Defendant stated reasons for discharging Plaintiff were not the true reasons, but instead were to pretext to hide Defendant's discriminatory motivations.

80. Plaintiff was subjected to harassment, including offensive comments, jokes, and slurs because of her protected status as an Argentinian.

81. This conduct was sufficiently pervasive and severe to alter the conditions of

Plaintiff's employment and created an abusive working environment.

82. Both supervisors and coworkers contributed to the harassment.

83. Defendant knew or should have known about the harassment, because Plaintiff reported it, because supervisors participated in it, and because the slurs were in public, but Defendant failed to take any corrective or preventative action.

84. As a direct and proximate result of Defendant's actions Plaintiff has suffered damaged including emotional and psychological distress, loss of wages, loss of future earnings, loss of future ages, loss of benefits, loss of future benefits, loss of earning potential and loss of career advancement.

85. The unlawful employment practices complained of above were committed intentionally.

86. The unlawful employment practices complained of above were committed with malice, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendant to punitive damages.

87. Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action, pursuant to C.R.S. 24-34-405(5).


**VI.    Employment Discrimination on the Basis of Sex in Violation of C.R.S. 24-34-402**


88. Plaintiff incorporate by reference herein the allegations contained in paragraphs

1 through 68 of this Complaint and Jury Demand.

89. Plaintiff, Silvana Pajor Flores, was subject to disparate treatment due to her protected status as a female.

90. Plaintiff's sex was the sole reason or motivating factor for Defendant's decision to take that aforementioned adverse employment actions.

91. Defendant stated reasons for discharging Plaintiff were not the true reasons, but instead were to pretext to hide Defendant's discriminatory motivations.

92. Plaintiff was subjected to harassment, including offensive comments, jokes, and slurs because of her protected status as a female.

93. This conduct was sufficiently pervasive and severe to alter the conditions of Plaintiff's employment and created an abusive working environment.

94. Both supervisors and coworkers contributed to the harassment.

95. Defendant knew or should have known about the harassment, because Plaintiff reported it, because supervisors participated in it, and because the slurs were in public, but Defendant failed to take any corrective or preventative action.

96. As a direct and proximate result of Defendant's actions Plaintiff has suffered damaged including emotional and psychological distress, loss on wages, loss of future earnings, loss of future ages, loss of benefits, loss of future benefits, loss of earning potential and loss of career advancement.

97. The unlawful employment practices complained of above were committed intentionally.

98. The unlawful employment practices complained of above were committed with malice, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendant to punitive damages.

99. Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action, pursuant to C.R.S. 24-34-405(5).

## VII.   Employment Discrimination on the Basis of Disability in Violation of C.R.S. 24-34-402

100.   Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 80 of this Complaint and Jury Demand.

101.   Defendant publically stated Plaintiff suffers from bi-polar mental condition and insane mental condition.

102.   Plaintiff is not currently diagnosed with any mental disorder.

103.   Plaintiff was at all times able to perform the essential functions of the employment position that she held.  Plaintiff satisfied the requisite skill, experience, education, and other job-related requirements of her employment position, as shown by her nearly three-year employment with Defendant and her historically outstanding performance reviews.

104.   Plaintiff suffered adverse employment actions by Defendant including being prevented form promotions, being given undesirable job assignments, and

being constructively discharged.

105.     Plaintiff's perceived disability was the sole reason or motivating factor for Defendant's decision to take that aforementioned adverse employment actions.

106.     Defendant stated reasons for discharging Plaintiff were not the true reasons, but instead were to pretext to hide Defendant's discriminatory motivations.

107.     Plaintiff was subjected to harassment, including offensive comments, jokes, and slurs because of her protected status as a female.

108.     This conduct was sufficiently pervasive and severe to alter the conditions of Plaintiff's employment, and created an abusive working environment.

109.     Both supervisors and coworkers contributed to the harassment.

110.     Defendant knew or should have known about the harassment, because Plaintiff reported it, because supervisors participated in it, and because the slurs were in public, but Defendant failed to take any corrective or preventative action.

111.     As a direct and proximate result of Defendant's actions Plaintiff has suffered damaged including emotional and psychological distress, loss of wages, loss of future earnings, loss of future ages, loss of benefits, loss of future benefits, loss of earning potential and loss of career advancement.

112.     The unlawful employment practices complained of above were committed intentionally.

113.     The unlawful employment practices complained of above were committed

with malice, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendant to punitive damages.

114.    Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action, pursuant to C.R.S. 24-34-405(5).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Silvana Pajor Flores, prays for relief as follows:

1.  Nonpecuniary damages, including, but not limited to mental anguish, emotional distress, loss of enjoyment of life and deprivation of civil rights;

2.  Pecuniary damages, including but not limited to, loss of earnings and/or earning capacity, out of pocket expenses in an attempt to mitigate her losses;

3.  Lost benefits in the form of medical expenses;

4.  Back pay in amount to be determined at trial

5.  Front pay;

6.  Statutory damages;

7.  Punitive damages as allowed;

8.  Injunctive and/or declaratory relief;

9.  Liquidated damages;

10. Attorney's fees, costs and expenses of this action as provided for by law;

and

11. Any such further relief as justice allows, such as section 102 & 103 of the

Civil Rights Act of 1991.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated this August 5, 2016

|  | Respectfully Submitted,<br><br>s/ signature |
|---|---|
|  | s/ Maria K. Ruskiewicz, Atty. No. 43919<br>Attorney Maria Ruskiewicz<br>2851 S. Parker Rd. Ste. 410<br>Aurora, Colorado 80014<br>Tel: (303) 481-4405<br>Fax: (303) 952-6562<br>attorneymariacolorado@gmail.com<br>Attorney for Plaintiff – Plaintiff |