IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. <u>1:16-CV-01992-CMA-KMT</u>

Silvana Pajor Flores

      Plaintiff,

v.

American Income Life Insurance Company <s>&</s>,
Xavier Inc., <u>Richard Correa, The Richard Correa Agency & Torchmark Corporation</u>

      Defendants,

---

<u>PLAINTIFF SECOND</u> AMENDED COMPLAINT AND JURY DEMAND

---

COMES NOW, Plaintiff, Silvana Pajor Flores, by and through her counsel, Attorney Maria Ruskiewicz, respectfully submits this Complaint and Jury Demand against Defendants, American Income Life Insurance Company and Xavier, Inc., <u>Richard Correa, The Richard Correa Agency & Torchmark Corporation</u> and alleges as follows:

**I)  Jurisdiction and Venue**

1.  Plaintiff brings this action pursuant to Title VII <u>of the Civil Rights act of 1964, as amended by the Civil Rights Act of 199</u>, 42 U.S.C. §2000e et seq. ("Title VII"),

~~and C.R.S.~~ Americans With Disabilities Act, 42 U.S.C. § 12101 et seq., Citizenship 8 U.S.C. § 1324b(a), Colo. Rev. Stat. § 24-34-401 & 402 et. seq., Colo. Rev. Stat. 13-80-101, Colo. Rev. Stat. 13-80-102; and applicable common laws.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1343(a)(4), 1367, 42 U.S.C. 2000e-5, and the aforementioned statutory provisions.

3. This Court has personal jurisdiction over Defendants because Defendants' principal place of business is located in Colorado, and because Defendants ~~has~~ had transacted business in availing themselves in Colorado that ~~has given~~ gives rise to this cause of action.

4. Venue is proper in the United States District Court for the District of Colorado under 42 U.S.C. § 2000e-5(f)(3), because the relevant employment records are kept in Colorado, decisions averse to Plaintiff's employment that are the subject of this action were made in Colorado, ~~because~~ Plaintiff worked in Colorado at the time of Defendants' unlawful employment practices, and ~~because~~ Plaintiff would have worked in Colorado if not for Defendants' unlawful employment practices.

5. ~~Xavier, Inc. through Rich Correa stated in writing to DORA Department of Regulatory Agency that Xavier Inc. is a d/b/a of American Income Life Insurance.~~

## II) Exhaustion of Administrative Remedies

6. Plaintiff has timely invoked and fully exhausted all administrative remedies applicable to this action.  Plaintiff received an Equal Employment Opportunity Commission "Right-to-Sue Letter" on May 10, 2016.

**III) Parties**

7. Plaintiff, Silvana Pajor-Flores, is an Argentinian female with a perceived disability who was retaliated against.  She is a lawful permanent resident and currently resides in the State of Colorado.  At the time of the incidents that gave rise to this action, Plaintiff was a resident of the State of Colorado, residing at 7515 Woody Creek Drive, Colorado Springs, CO 80911.

8. Defendants, American Income Life Insurance Company, is an insurance company incorporated in Indiana, operating out of Colorado and other states primarily engages in selling of insurance policies and coverage exclusively for American Income Life Insurance.   American Income Life Insurance is a wholly owned subsidiary of Torchmark Corporation (NYSE: TMK), an S&P 500 Company.  American Income Life Insurance is an agent of Torchmark Corporation. .Defendants's principal office address is not registered, but the registered agent is Division of Insurance, 1560 Broadway, Denver, CO 80202. Filing ID #: 19871036962.

9. At all-time relevant to this action, Defendants have been employers as defined by

~~the ADA and Title VII.  Xavier, Inc. through Rich Correa stated in writing to DORA-Department of Regulatory Agency that Xavier, Inc. is a d/b/a of American Income Life Insurance.~~

10. Xavier, Inc. through Rich Correa stated in writing to DORA-Department of Regulatory Agency that Xavier Inc. is a d/b/a of American Income Life Insurance. Richard Correa is the registered agent of Xavier Inc. filed with The Colorado Secretary of State addressed at 14001 E Iliff Ave Suite 411, Aurora, CO 80014. Filing ID # 20091039265.

11. Torchmark Corporation is the parent or holding company of American Income Life Insurance.  Torchmark Corporation "purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Torchmark Corporation is the Principal of American Income Life Insurance. Torchmark Corporation has not registered as a foreign entity with the forum state.  Torchmark Corporation is incorporated in Delaware Filing #: 882974 with a registered agent The Corporation Trust Company located at Corporation Trust Center 1209 Orange St, Wilmington, DE 19801.

12. Richard Correa is an employer of Plaintiff.  He is an employee of American Income Life Insurance.  At the time of the incidents that gave rise to this action, Defendant was a resident of the State of Colorado and employed Plaintiff in the State of Colorado.  The incidents occurred in the State of Colorado.  Richard Correa exclusively sells insurance for American Income Life Insurance.  He is

located at 14001 E Iliff Ave #411, Aurora, CO 80014.

13. The Richard Correa Agency is possibly a Doing Business As of Richard Correa.

The agency, an agent of American Income Life Insurance, exclusively sells

American Income Life Insurance policies.  The agency is an agent of American

Income Life Insurance.  The agency is not registered within the State of

Colorado.  The location is 14001 E Iliff Ave #411, Aurora, CO 80014.

14. At all-times relevant to this action, Defendants have been employers as defined

by the ADA and Title VII.


IV.   **General Allegations**


15. Plaintiff incorporated by reference herein the allegations contained in paragraphs

1 through 14 of this Complaint and Jury Demand.

16. Plaintiff was hired by Defendants, American Income Life Insurance Company

through Richard Correa, in August 23, 2013 in Colorado Springs, Colorado, and

worked for the Defendants until she was unlawfully terminated by constructive

discharge on March 13, 2015 due to discrimination.

17. Plaintiff was interviewed before being hired.  The Defendants held a 3 step

interview telling candidates that promotions are based on performance and not

on seniority or office politics.  Defendants showed a chart of income according to

the different contract levels based on production and persistency.

18. Plaintiff reasonably relied on the promises to be treated fairly.

19. ~~Plaintiff was hired as a contract worker or W-9 status as a producer agent but could have been an employee based on Defendants' actions.  Either way because her position was sales and she could be a factual employee, this Court has proper jurisdiction and venue.~~

20. Plaintiff signed employment contracts with Defendants on August 21, 2013, February 1, 2016 and November 28, 2014 detailing commissions and termination policies.

21. Defendants mandated union membership.  Plaintiff mandatorily joined and was given a Union Agreement, which discussed non-discrimination policies, benefits, reimbursements, agent compensation, relationships and principles, union security, seniority and discipline action, grievance procedure, insurance, rep compensation, company programs, bonuses, and duration of agreement, which automatically renews yearly.

22. Plaintiff was given death benefits, health insurance, stock options, reimbursed for her license, and retirement plan.

23. Richard Correa was Plaintiff's ultimate supervisor proceeded by Peter Van Der WestHuizen and Andrew Mcquade.

24. Richard Correa was empowered to take tangible employment actions against the Plaintiff.  He was empowered with authority to hire, fire, fail to promote, reassignment with significantly different responsibility and made decisions that

<u>caused significant change in benefits.</u>

25. Plaintiff was hired onto team "West".  She was the only female <u>manager, Lawful Permanent Resident, perceived medical condition,</u> and Argentinian on this team. The teams are pyramid schemed.   Rich Correa pursuant then Mcquade then Peter Van Der West Huizen then Plaintiff.  At the time Plaintiff was hired, James Harding came on board and started on the ~~same team~~ <u>Mcquade team</u> and position as Plaintiff.

26. <u>In opposition to contracts,</u> Plaintiff's mandatory start time was 8:00 am per Richard Correa.  Rich Correa made Plaintiff mandatorily make recruiting calls from 8:00 am until 11:00 am daily with no exceptions to build a sales team.  The start times and recruiting time are normally left to the discretion of the sales person, since the position's pay is based on production and persistency.

27. <u>Plaintiff reasonably believed that Richard Correa had broad delegated powers of ability to significantly influence employment decisions affecting her.</u>

28. <u>Plaintiff, Richard Correa, Richard Correa Agency, American Income Life Insurance, and co-workers exclusively sold American Income Life Insurance policies.</u>

29. Trainees-who are the people that were recruited were taken by the sales person who booked them.  Plaintiff made recruiting calls daily to build her team. Plaintiff's trainees were given in protest to James Harding by the command of Andrew Mcquade and Peter Van Der West Huizen.  Plaintiff had the highest

amount of trainees for that position level. James Harding was given Plaintiff's

recruits to build his team to get promoted faster for an increased in income.

Because Plaintiff's recruits were taken from her in direct opposition of protocol,

James Harding was able to advance before Plaintiff.  Plaintiff but for

discriminatory actions by the Defendants would have advanced pursuant to

protocol before the males on her team.

30. Plaintiff was only given her recruits that were not sought after because of age or

Hispanic accents or legal situations with prior employers and all females. Peter

Van Der West Huizen specifically placed these recruits with Plaintiff in protest.

31. Plaintiff's from 2014 until unlawful termination had the highest production and

persistency on her team.  Her average levels of 45-50 weeks of 52 weeks yearly.

Production (the first payment from a new client) was calculated monthly for each

team member. Persistency (the production that stayed on the books) was

calculated monthly for each team member.

32. Each agent's production and persistence reports are called AP&P (agent's

production and persistence report).  This with the agent's weekly report shows

the number of appointments given the previous week, number of referrals

collected, average household income, average ALP (annualized premium)

reports that consist of policies sold and number of sales.  These reports were

used for weekly meeting and reviews with Richard Correa, Peter Van Der

WestHuizen, and Andrew Mcquade.  Based on these reports Mcquade always

noted steady production and persistency levels with increasing numbers for Plaintiff.

33. Richard Correa would sit in on the meetings and reviews with co-workers when the production numbers were low.

34. During these routine meetings and reviews Plaintiff always inquired about how her recruits are being taken from her.  She would always bring up the unfair treatment of leads and how the discriminatory actions, such as taking her recruits, taking her leads and taking her territories are affecting her advancements.

35. Production and Persistency are the basis for promotion and bonuses.  For example, General Agent come with a 5% increase on personal production and larger overwrites.  Agents are promoted based upon an achieved level of production to Supervising Agent to General Agent then to Master Agent and so on.

36. Plaintiff met the threshold for advancement to Supervising Agent in February or March of 2014, months prior to advancing as General Agent in October 2014.  Not only was the advancement months late, but also conditional.  Non Argentinians, Citizens and males on team "West" with less production and persistency levels than Plaintiff were advanced prior to Plaintiff, some without conditions or less than the standard conditions, if any.

37. Shortly thereafter Plaintiff met the threshold for advancement to Master Agent but

~~was not advanced.   Male and non-Argentinian members on team "West" were advanced to Master Agent with lesser production levels than Plaintiff~~

38. During Plaintiff employment there were other teams. The other teams made sales separate of each other. Plaintiff requested to her supervisors to be transferred to another team because the women were treated equally on those other teams.  Plaintiff was denied that request for the benefit of the males and non- Argentinian uppers on her team "West" making her superiors good money.

39. During Plaintiff's employment with Defendants, she was repeatedly subjected to racist or original or nationality, comments, jokes and slurs, by coworkers and supervises alike.   Frequently the words "too fucking Mexican", "wet back" or if "she had to get a domestic violence to get her green card" in front of her, coworkers, superiors and other employees.  This was done by multiple staff members at once.

40. During Plaintiff's employment she was not allowed to go to conduct business representing American Income Life Insurance in other states because she was "too fucking Mexican" or female.

41. For example, in 2014 Rich Correa stated that there were sales to be had in Kansas.  Plaintiff was the first committed to go out there.  She purchased her KS producer license, invested in a rental property to set up shop with her team and built her leads.  When her leads were impressive around 120-150 leads (names and number of union members that requested benefits) she was demanded by

Andrew Mcquade and Peter Van Der West Huizen during a meeting to give her leads to a Caucasian male coworker Andrew Kerr.  She was then demanded to take his leads and come back to Denver.  His leads were around 30 leads.  She lost that investment, time and again was not able to advance.

42. After the mandatory relocation back to Colorado she brought to her team leaders that she was concerned over the discriminatory actions and the Defendants stated Nebraska can be just as good as Kansas.  She purchased her NE producer license and went.  She had no team, no leads and the market was vacant.  During this time Hannah Helgeson witnessed the discriminatory placements of Plaintiff.   The team would use her to build a great lead packet then demand that it be given to the team leaders for themselves or to assign to non-Argentinian males to ensure her low level agent title to keep kicking up money to them.

43. Plaintiff demanded to go back to Kansas where she was one of the top 83 agents in the world at her level, expecting promotions and increased pay.  She was told she was too fucking Mexican and to get over it.  She was denied due to discriminatory actions.  Her promotions and income increase was given to ~~Andrew Kerr~~ Tyler Storie.

44. James Harding another agent with less production and less persistency than Plaintiff got advancement to̶t General Agent before Plaintiff.  He didn't have to recruit and was given training for agents, just as all the other males.  Plaintiff was

denied training.

45. Tyler Storie was also promoted before Plaintiff with less production and persistency ~~and time~~.  Plaintiff was given another position to start up an Office with Tyler Storie in Colorado Springs.  This office relation came with un-coded teams' members.  Un-coded team members are not assigned to a sales agent. Plaintiff had no sales team to build her pyramid up.  The later found out that Tyler Stories had coded team members that built his pyramid up.

46. Plaintiff worked 75-80 hours weekly and was told, it's not enough time.  That's why she didn't get promoted.  She was crazy that's why she didn't get promoted. She was too fucking Mexican, that's why she didn't get promoted.  Only discriminatory practices are why she didn't get promoted.

47. During Plaintiff's employment with Defendants she was repeatedly subjected to sexual comments, jokes and slurs from coworkers and supervisors alike. Frequently they used the words "bitch, ignorant and stupid"," never hire females, they get pregnant or quit or have boyfriends, there's always something", and "never trust a female who bleeds for 5 days and doesn't die".

48. Peter Van Der WestHuizen would text Plaintiff's agents to buy cocaine and sell it to him.

49. Plaintiff upon finding this out confronted Peter Van Der WestHuizen via text messaging.   She made it clear it was not appropriate. -He responded it was for a friend, confirming he did ask her agent.

50. Plaintiff complained of the discrimination to coworkers and supervisors.  She was retaliated against with a perceived disability.  "You're just bi-polar", "straighten your mind', "you're crazy" and "You're insane", making a hostile work environment in retaliation.

51. Plaintiff submitted a written complaint to American Income Life Insurance in addition to her verbal complaints about her discriminatory treatment and sufferance.

52. American Income Life Insurance took no corrective measures, such as expungement of negative evaluations, reinstatement, apology by the supervisor, monitoring or correction of the harm caused by the harassment and discrimination.

53. There are at minimum 3 superiors and 1-2 coworkers continually discriminating against her daily since 2014 until unlawful termination.

54. In 2013-2015 Plaintiff brought this to the attention of her supervisors and asked to be promoted, not called names and to be allowed to conduct.  She was told that she was "too fucking Mexican" or "you're just bi-polar" as a response.

55. Plaintiff received one action in February 9th of 2015 in retaliation for complaining about the discriminatory actions to her supervisors.  The protocol for disciplinary action was not followed.  The accusation was boycotting the supervisor.  This was prior to March 13, 2016 and when she had the highest production levels of the team.

56. During Plaintiff's employment, she was an exemplary employee, receiving employee of the month and achieving continual high levels of production.

57. Plaintiff was constructively discharged on February 17, 2015 in retaliation for her continual attention to discriminatory practices by her employers, supervisors and co-workers and hostile work environment.

**V.    CLAIMS FOR RELIEF**

**VI.    Employment Discrimination on the basis of National Origin/Ancestry in Violation of Title VII of the Civil Rights Act**

58. Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 57 of this Complaint and Jury Demand.

59. Plaintiff, Silvana Pajor Flores, was subject to disparate treatment before of her protected class as an Argentinian.

60. Plaintiff's National Origin or Ancestry was either the sole reason or a motivating factor for the Defendants' decision to not promote Plaintiff, for Defendants' decision to place Plaintiff in an undesirable job assignment, and for the Defendants' decision to constructively discharge Plaintiff.

61. Defendants stated reasons for discharging Plaintiff were not the true reasons, but instead were to pretext to hide Defendants' discriminatory motivations.

62. Plaintiff was subjected to harassment, including offensive racial comments, racist jokes, and slurs because of her protected status as an Argentinian.

63. This conduct was sufficiently pervasive and severe to alter the conditions of Plaintiff's employment, and created an abusive working environment.

64. Both supervisors and coworkers contributed to the harassment.

65. Defendants knew or should have known about the harassment, because Plaintiff reported it, because supervisors participated in it, and because the slurs were in public, but Defendants failed to take any corrective or preventative action.

66. As a direct and proximate result of Defendants' actions Plaintiff has suffered damaged including emotional and psychological distress, loss of wages, loss of future earnings, loss of future wages, loss of benefits, loss of future benefits, loss of earning potential and loss of career advancement.

67. The unlawful employment practices complained of above were committed intentionally.

68. Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action, pursuant to 42 U.S.C. 2000e-f(k).

## VII.    Employment Discrimination on the basis of Sex in Violation of Title VII of the Civil Rights Act

69. Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 68 of this Complaint and Jury Demand.

70. Plaintiff, Silvana Pajor Flores, was subject to disparate treatment before of her

protected class as a female.

71. Plaintiff's sex was either the sole reason or a motivating factor for the Defendants' decision to not promote Plaintiff, for Defendants' decision to place Plaintiff in an undesirable job assignment, and for the Defendants' decision to constructively discharge Plaintiff.

72. Defendants stated reasons for discharging Plaintiff were not the true reasons, but instead were to pretext to hide Defendants' discriminatory motivations.

73. Plaintiff was subjected to harassment, including offensive comments, jokes, and slurs because of her protected status as a female.

74. This conduct was sufficiently pervasive and severe to alter the conditions of Plaintiff's employment, and created an abusive working environment.

75. Both supervisors and coworkers contributed to the harassment.

76. Defendants knew or should have known about the harassment, because Plaintiff reported it, because supervisors participated in it, and because the slurs were in public, but Defendants failed to take any corrective or preventative action.

77. As a direct and proximate result of Defendants' actions Plaintiff has suffered damaged including emotional and psychological distress, loss of wages, loss of future earnings, loss of future ages, loss of benefits, loss of future benefits, loss of earning potential and loss of career advancement.

78. The unlawful employment practices complained of above were committed intentionally.

79. Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action, pursuant to 42 U.S.C. 2000e-f(k).

**VIII.    Intentional sex-based wage discrimination under the Equal Pay Act of 1963 and Lilly LedBetter Fair Pay Act of 2009**

80. Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 79 of this Complaint and Jury Demand.

**IX.    Employment Discrimination on the Basis of Disability in Violation of the Americans with Disabilities Act**

81. Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 80 of this Complaint and Jury Demand.

82. Defendants publically stated Plaintiff suffers from bi-polar mental condition and insane mental condition, which would be protected by HIPPA.

83. Plaintiffs is not currently diagnosed with any mental disorder.

84. Plaintiff was at all times able to perform the essential functions of the employment position that she held.  Plaintiff satisfied the requisite skill, experience, education, and other job-related requirements of her employment position, as shown by her nearly three-year employment with Defendants and her

historically outstanding performance reviews.

85. Plaintiff suffered adverse employment actions by Defendants including being prevented form promotions, being given undesirable job assignments, and being constructively discharged.

86. Plaintiff's perceived disability was the sole reason or motivating factor for Defendants' decision to take that aforementioned adverse employment actions.

87. Defendants stated reasons for discharging Plaintiff were not the true reasons, but instead were to pretext to hide Defendants' discriminatory motivations.

88. Plaintiff was subjected to harassment, including offensive comments, jokes, and slurs because of her protected status as a female.

89. This conduct was sufficiently pervasive and severe to alter the conditions of Plaintiff's employment, and created an abusive working environment.

90. Both supervisors and coworkers contributed to the harassment.

91. Defendants knew or should have known about the harassment, because Plaintiff reported it, because supervisors participated in it, and because the slurs were in public, but Defendants failed to take any corrective or preventative action.

92. As a direct and proximate result of Defendants' actions Plaintiff has suffered damaged including emotional and psychological distress, loss of wages, loss of future earnings, loss of future wages, loss of benefits-retirement, stocks, loss of future benefits, loss of earning potential and loss of career advancement.

93. The unlawful employment practices complained of above were committed

intentionally.

94. The unlawful employment practices complained of above were committed with malice, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendants to punitive damages.

95. Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action, pursuant to 42 U.S.C. 2000e-f(k).

## X.   Employment Discrimination on the Basis of National Origin/Ancestry in Violation of C.R.S. 24-34-402

96. Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 95 of this Complaint and Jury Demand.

97. Plaintiff, Silvana Pajor Flores, was subject to disparate treatment due to her protected status as an Argentinian.

98. Plaintiff's National Origin/Ancestor was the sole reason or motivating factor for Defendants' decision to take that aforementioned adverse employment actions.

99. Defendants stated reasons for discharging Plaintiff were not the true reasons, but instead were to pretext to hide Defendants' discriminatory motivations.

100.      Plaintiff was subjected to harassment, including offensive comments, jokes, and slurs because of her protected status as an Argentinian.

101.      This conduct was sufficiently pervasive and severe to alter the conditions

of Plaintiff's employment and created an abusive working environment.

102.    Both supervisors and coworkers contributed to the harassment.

103.    Defendants knew or should have known about the harassment, because Plaintiff reported it, because supervisors participated in it, and because the slurs were in public, but Defendants failed to take any corrective or preventative action.

104.    As a direct and proximate result of Defendants' actions Plaintiff has suffered damages including emotional and psychological distress, loss of wages, loss of future earnings, loss of future ages, loss of benefits, loss of future benefits, loss of earning potential and loss of career advancement.

105.    The unlawful employment practices complained of above were committed intentionally.

106.    The unlawful employment practices complained of above were committed with malice, or at least with reckless indifference to Plaintiff's federally protected rights, thereby subjecting Defendants to punitive damages.

107.    Plaintiff is also entitled to recover her reasonable costs and attorneys' fees for bringing this action, pursuant to C.R.S. 24-34-405(5).

**XI.    Employment Discrimination on the Basis of Sex in Violation of C.R.S. 24-34-402**

108.     Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 107 of this Complaint and Jury Demand.

109.     Plaintiff, Silvana Pajor Flores, was subject to disparate treatment due to her protected status as a female.

110.     Plaintiff's sex was the sole reason or motivating factor for Defendants' decision to take that aforementioned adverse employment actions.

111.     Defendants stated reasons for discharging Plaintiff were not the true reasons, but instead were to pretext to hide Defendants' discriminatory motivations.

112.     Plaintiff was subjected to harassment, including offensive comments, jokes, and slurs because of her protected status as a female.

113.     This conduct was sufficiently pervasive and severe to alter the conditions of Plaintiff's employment and created an abusive working environment.

114.     Both supervisors and coworkers contributed to the harassment.

115.     Defendants knew or should have known about the harassment, because Plaintiff reported it, because supervisors participated in it, and because the slurs were in public, but Defendants failed to take any corrective or preventative action.

116.     As a direct and proximate result of Defendants' actions Plaintiff has suffered damaged including emotional and psychological distress, loss on wages, loss of future earnings, loss of future ages, loss of benefits, loss of future

benefits, loss of earning potential and loss of career advancement.

117.     The unlawful employment practices complained of above were committed

intentionally.

118.     The unlawful employment practices complained of above were committed

with malice, or at least with reckless indifference to Plaintiff's federally protected

rights, thereby subjecting Defendants to punitive damages.

119.     Plaintiff is also entitled to recover her reasonable costs and attorneys' fees

for bringing this action, pursuant to C.R.S. 24-34-405(5).

**XII.     Employment Discrimination on the Basis of Disability in Violation of C.R.S.**

**24-34-402**

120.     Plaintiff incorporate by reference herein the allegations contained in

paragraphs 1 through 119 of this Complaint and Jury Demand.

121.     Defendants publically stated Plaintiff suffers from bi-polar mental condition

and insane mental condition.

122.     Plaintiff is not currently diagnosed with any mental disorder.

123.     Plaintiff was at all times able to perform the essential functions of the

employment position that she held.  Plaintiff satisfied the requisite skill,

experience, education, and other job-related requirements of her employment

position, as shown by her nearly three-year employment with Defendants and her

historically outstanding performance reviews.

124.     Plaintiff suffered adverse employment actions by Defendants including

being prevented form promotions, being given undesirable job assignments, and

being constructively discharged.

125.     Plaintiff's perceived disability was the sole reason or motivating factor for

Defendants' decision to take that aforementioned adverse employment actions.

126.     Defendants stated reasons for discharging Plaintiff were not the true

reasons, but instead were ~~to~~ pretext to hide Defendants' discriminatory

motivations.

127.     Plaintiff was subjected to harassment, including offensive comments,

jokes, and slurs because of her protected status as a female.

128.     This conduct was sufficiently pervasive and severe to alter the conditions

of Plaintiff's employment, and created an abusive working environment.

129.     Both supervisors and coworkers contributed to the harassment.

130.     Defendants knew or should have known about the harassment, because

Plaintiff reported it, because supervisors participated in it, and because the slurs

were in public, but Defendants failed to take any corrective or preventative

action.

131.     As a direct and proximate result of Defendants' actions Plaintiff has

suffered ~~damaged~~ damages including emotional and psychological distress, loss

of wages, loss of future earnings, loss of future ages, loss of benefits, loss of

future benefits, loss of earning potential and loss of career advancement.

132.     The unlawful employment practices complained of above were committed

intentionally.

133.     The unlawful employment practices complained of above were committed

with malice, or at least with reckless indifference to Plaintiff's federally protected

rights, thereby subjecting Defendants to punitive damages.

134.     Plaintiff is also entitled to recover her reasonable costs and attorneys' fees

for bringing this action, pursuant to C.R.S. 24-34-405(5).


**XIII.     Wrongful Discharge based on implied contract Continental Air Lines 731**

**P.2d 708, 711 (Colo. 1987).**

135.     Plaintiff incorporate by reference herein the allegations contained in

paragraphs 1 through 134 of this Complaint and Jury Demand.

136.     Defendants promulgated termination policies that suggested the Plaintiff

was not employed at the will of the company.

137.     Defendants willfully breached.


**XIV.     Wrongful Constructive Discharge based on Promissory Estoppel**

**Continental Air Lines 731 P.2d 708, 711 (Colo. 1987).**

138.     Plaintiff incorporate by reference herein the allegations contained in

paragraphs 1 through 137 of this Complaint and Jury Demand.

139.     The Defendants reasonably should have expected the employee to consider the termination policy a commitment from the employer to follow the termination procedures.

140.     The Plaintiff reasonably relied on the termination procedures to her detriment.

141.     Injustice can be avoided only by enforcement of the termination procedures.

142.     Defendants willfully breached.

**XV.     Wrongful Termination Against Public Policy**

143.     Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 142 of this Complaint and Jury Demand.

144.     The employer directed the employee to perform an illegal act as part of the employee's work-related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege.

145.     The action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's right or privilege as a worker.

146.     The employee was terminated as the result of refusing to perform the act directed by the employer

**XVI.    Wrongful Constructive Discharge Based on Violations of Public Policy-Employer's Retaliation against an employee for exercising a right or performing a public duty**

147.    Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 146 of this Complaint and Jury Demand.

148.    During the course of employment, Plaintiff gave Defendants' notice of discriminatory practices or actions against her, which is (1) an exercise of a statuary, regulatory, or rule-based right relating to public health, safety, or welfare, or (2) a performance of a public duty relating to Plaintiff's basic responsibility as a citizen, or (3) an exercise for an important work-related right or privilege because she reasonably believed she had a right to follow the statute, regulation, or rule to perform her duty as a Citizen or exercise her right or privilege as  worker.

149.    The Defendants were aware or reasonably should have been aware that Plaintiff reasonably believed she had a right to follow the statue, regulation, or rule to perform her duty as a Citizen or exercise her right or privilege as a worker; and

150.    The Defendants discharged the Plaintiff because the Plaintiff followed the statue, rule, regulation and performed her duty as a citizen exercising her right or privilege as a worker.

XVII.    **Breach of Implied or Express Covenant of Good Faith and Fair Dealing**
         **Restatement (Second) of Torts §§ 766-67 (1979) Soderlun v. Pub. Serv. Co.,**
         **944 P.2d 621, 621-23 (Colo. Ct. App. 1997), cert. denied, (Oct. 20, 1997)**
         **Telluride Real Estate Co. v. Penthouse Affiliates, LLC, 996 P.2d 151 (Colo.**
         **Ct. App. 1999);**

151.     Plaintiff incorporate by reference herein the allegations contained in
         paragraphs 1 through 150 of this Complaint and Jury Demand.

152.     Defendants promised to be fair.

153.     Defendants have an enforceable contract with Plaintiff.

154.     Plaintiff relied on Defendants' promises.

XIV.    **Invasion of Privacy Ozer, 940 P.2d 371**

155.     Plaintiff incorporate by reference herein the allegations contained in
         paragraphs 1 through 154 of this Complaint and Jury Demand.

156.     The fact or facts disclosed are private in nature;

157.     The disclosure was made to the public;

158.     The disclosure is highly offensive to a reasonable person;

159.     The fact or facts disclosed are not of legitimate concern to the public; and

160.     The Defendants disclosure were made with reckless disregard of the
         private nature of the fact or facts.

**Tortious Interference With Contract Claims Against Individual Supervisors**

**Trimble v. City & County of Denver, 697 P.2d 716, 725-26 (Colo. 1985).**

**161.**     Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 160 of this Complaint and Jury Demand.

**162.**     A valid contract existed between the Plaintiff and the Defendants;

**163.**     The supervisor knew or should have known of this contract;

**164.**     The supervisor intended to induce and caused a breach of the contract by the employer; and

165.     The employee was damaged as a result of conduct that was both intentional and improper.

**XV.     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (OUTRAGEOUS CONDUCT) Grandchamp v. United Air Lines, Inc., 854 F.2d 381, 383 (10th Cir. 1988)**

**166.**     Plaintiff incorporate by reference herein the allegations contained in paragraphs 1 through 165 of this Complaint and Jury Demand.

**167.**     Plaintiff alleged conduct that is so "outrageous in character, and so extreme in degree, as to be beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

**\*\*\*Plaintiff includes Vicarious Liability and Respondeat Superior\*\* to applicable claims.**

## XVII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Silvana Pajor Flores, prays for relief as follows:

1.  Nonpecuniary damages, including, but not limited to mental anguish, emotional distress, loss of enjoyment of life and deprivation of civil rights;

2.  Pecuniary damages, including but not limited to, loss of earnings and/or earning capacity, out of pocket expenses in an attempt to mitigate her losses;

3.  Lost benefits in the form of medical expenses;

4.  Back pay in amount to be determined at trial

5.  Front pay;

6.  Statutory damages;

7.  Punitive damages as allowed;

8.  Injunctive and/or declaratory relief;

9.  Liquidated damages;

10. Attorney's fees, costs and expenses of this action as provided for by law; and

11. Any such further relief as justice allows, such as section 102 & 103 of the Civil Rights Act of 1991.

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated this ~~August~~12, 2016 5th Day of December, 2016

| | Respectfully Submitted,<br><br>/s/ signature |
|---|---|
| | ~~s/ Eric Collofello, Atty. No. 49640~~<br>~~Attorney Eric Collofello~~<br>~~2851 S. Parker Rd. Ste. 410~~<br>~~Aurora, Colorado 80014~~<br>~~Tel: (303) 481-4405~~<br>~~Fax: (303) 952-6562~~<br>~~ericcoloradolaw@gmail.com~~<br>Attorney for Plaintiff<br>s/ Maria K. Ruskiewicz, Atty. No. 43919<br>Attorney Maria Ruskiewicz<br>2851 S. Parker Rd. Ste. 410<br>Aurora, Colorado 80014<br>Tel: (303) 481-4405<br>Fax: (303) 952-6562<br>attorneymariacolorado@gmail.com |