IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 16-cv-01992-CMA-KMT

SILVANA PAJOR-FLORES,

    Plaintiff,

v.

AMERICAN INCOME LIFE INSURANCE COMPANY and XAVIER Inc.,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendants' Motions for Summary Judgment, wherein they each argue that Plaintiff worked as an independent contractor, not an employee, and that her employment discrimination claims should therefore be summarily denied. (Doc. ## 43, 46.) The Court grants both motions.

### I.    BACKGROUND

Defendant American Income Life Insurance Company (AIL) is a life insurance company in the business of underwriting, issuing, and servicing insurance. (Doc. # 43-1 at ¶ 3.) AIL contracts with licensed insurance agents as independent contractors to market its insurance products based on a tiered system. (*Id.* at ¶ 4.) The highest level agent contract is what AIL calls a state general agent (SGA); the next tier is a regional general agent (RGA) contract followed by a master general agent (MGA) contract. (*Id.* at ¶ 5.) AIL also offers basic agent contracts. (*Id.*) Basic agents are usually affiliated

with a particular SGA, but AIL does not mandate with whom a SGA can contract. (*Id*.) Richard Correa is an independently-contracted SGA of AIL and the President and Founder of Defendant Xavier, Inc. (Xavier), a Colorado-based insurance agency selling AIL's insurance products. (Doc. # 43-3 at 4–5.)

In August 2013, Plaintiff became affiliated with Mr. Correa and Xavier when she executed a basic agent contract with AIL. (Doc. # 43-6.) She later executed supervising agent and general agent contracts as well. (Doc. ## 43-7; 43-8.) Plaintiff had no employment contracts with Xavier or Mr. Correa. (Doc. # 49 at 5.)

During her time affiliated with AIL, Xavier, and Mr. Correa, Plaintiff alleges that she was subjected to employment discrimination in violation of Title VII, the Americans with Disabilities Act, the Equal Pay Act, the Lilly Ledbetter Act, and the Colorado Anti-Discrimination Act. (Doc. # 6.) Because these Acts do not protect independent contractors, Plaintiff must prove she was an employee to maintain this action. *See, e.g.*, *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998) ("In order to establish a prima facie case under Title VII, [the plaintiff is] required to prove, among other things, that [the defendant] was her employer.").

In AIL's Motion for Summary Judgment (Doc. # 43), AIL argues that Plaintiff was an independent contractor because, among other things, AIL did not control or supervise her, paid her only by commissions, and gave her no employee benefits and that, indeed, Plaintiff classified herself as an independent contractor on her tax returns. In Xavier's Motion for Summary Judgment (Doc. # 46), Xavier argues that it never entered into a contractual employment relationship with Plaintiff and, for the same

2

reasons set forth by AIL, contends that Plaintiff serves as AIL's independently-contracted insurance agent. In her Responses to Defendants' Motions (Doc. ## 49, 52), Plaintiff claims that she was a statutory employee of AIL, pointing to Xavier's and Mr. Correa's relationship with AIL as well as alleging examples of AIL's control of her training, work schedule, pay, equipment, and benefits.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential

element of that party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in her favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III. PLAINTIFF'S EMPLOYMENT STATUS

#### A. LAW

The Tenth Circuit has adopted a hybrid, multi-factor test for distinguishing employees from independent contractors. *Xie v. Univ. of Utah*, 243 F. App'x 367, 373 (10th Cir. 2007); *Oestman v. Nat'l Farmers Union Ins. Co.*, 958 F.2d 303, 305 (10th Cir. 1992). The hybrid test focuses on the employer's right to control the "means and manner" of the worker's performance. *Xie,* 243 F. App'x at 373; *Oestman*, 958 F.2d at 305. The primary factors considered by courts applying the hybrid test are:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is

> done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties.

*Xie,* 243 F. App'x at 373; *Oestman*, 958 F.2d at 305. No single factor is conclusive. *Oestman*, 958 F.2d at 305. Rather, the court must look at the totality of circumstances surrounding the working relationship between the parties. *Id.* (citing *Spirides v. Reinhardt*, 613 F.2d 826, 832 (D.C. Cir. 1979)).

### B. ANALYSIS

As a preliminary matter, the Plaintiff acknowledges that the sole issue is whether she "was a statutory employee of . . . AIL." (Doc. # 49 at 1.) Plaintiff concedes that she had no employment contract with Xavier or Mr. Correa and frames all of her argument toward establishing an employee/employer relationship with AIL. (Doc. # 49 at 5.) She argues not that she was an employee of Xavier but rather that she "was a statutory employee of . . . AIL *through Xavier, Inc. and Richard Correa*." (Doc. # 52 at 1.) Plaintiff has not, therefore, even attempted to set forth sufficient facts demonstrating that a genuine dispute exists with respect to whether she was a statutory employee of Xavier. Summary judgment is thus warranted with respect to Defendant Xavier.

The Court next considers the parties' arguments with respect to Defendant AIL, ultimately concluding that summary judgment in AIL's favor is also warranted. To begin, the parties' intentions as expressed in their agent agreements indicate that Plaintiff was an independent contractor. In describing the relationship between Plaintiff and AIL, Plaintiff's agent contract explicitly states the following:

> The Agent is not an employee of the Company; rather, the [A]gent is an independent contractor. The Agent has no fixed hours and is free to choose the time and manner in which services are performed. The Agent shall not represent or imply that the Agent is an employee or officer of the Company, or a person having general authority to transact business for the Company. The Agent will not be treated as an employee with respect to services performed under this contract for federal and state tax purposes. As an independent contractor, the Agent is not eligible for unemployment benefits or worker's compensation.

(Doc. # 43-6.) Plaintiff's supervising agent and general agent contracts also contained the above-cited provision. (Doc. ## 43-7; 43-8.) Plaintiff's contracts also provided that (1) Plaintiff would be paid by commissions, depending on her own gains and losses, (2) Plaintiff would be responsible for any expenses incurred in producing insurance for AIL, including her "means of transportation [and] office or place of business"; and (3) either party could terminate the working relationship without cause by giving thirty-days notice or by mutual consent. (Doc. ## 43-1 at ¶ 10; 43-5 at 196–97; 43-6 at 2; 43-7 at 2; 43-8 at 2.)

Plaintiff also executed a "Special Notice Acknowledgment" with AIL, which reiterated her status as an independent contractor. (Doc. # 43-9 at 2.) The acknowledgment clearly states, "I understand that I will not be an employee of American

6

Income; rather, I will work as an independent contractor for American Income." (*Id.*) Moreover, it is undisputed that, for every year Plaintiff worked for AIL, AIL provided Plaintiff with an Internal Revenue Service ("IRS") Form 1099, from which no federal or state income or social security taxes were withheld. (Doc. ## 43-10; 43-5 at 302–04.) Plaintiff then filed her taxes as a self-employed individual. (Doc. # 43-5 at 53, 301.)

On the face of these documents, the Court finds that no rational trier of fact could find that Plaintiff worked as an employee, rather than an independently-contracted agent, for AIL. Plaintiff nonetheless argues that a genuine dispute exists regarding whether, despite these formal documents, AIL treated her as an employee in practice. She contends that (1) Mr. Correa, on behalf of AIL, maintained control over her daily schedule using an online tracking system called E-App and required her to use a specific script rather than her own pitching methods when selling insurance; (2) AIL provided her bonuses, benefits, and stock options; and (3) AIL paid for her licensure, in addition to various mandatory trainings. The Court addresses each of these arguments in turn.

    1. <u>Daily Schedule and Pitching Methods</u>

First, Plaintiff's contentions with respect to Mr. Correa are hardly relevant to her relationship with AIL, and even if they were, her conclusory assertions are not supported by the evidence she proffers. Mr. Correa, who is not a defendant in this case, was himself an independent contractor of AIL, not an employee. Even assuming that he was directed by AIL to supervise Plaintiff, nothing in the record before this Court elevates that supervision to the type that would create an employee-employer

7

relationship.  Indeed, the undisputed facts demonstrate that AIL had virtually no discretion over the manner and means by which Plaintiff conducted the day-to-day business of selling insurance.  AIL never directed the type of insurance products Plaintiff must sell, nor required Plaintiff to exclusively sell AIL's products.[1]  (Doc. # 43-5 at 35–36, 286–87.)  AIL never dictated when and how Plaintiff sold insurance; rather, her daily activities were virtually unsupervised.  (*Id.* at 168; 43-1 at ¶ 7; 43-2 at 135–36.)  Plaintiff scheduled her own appointments at her convenience, and she was not required to report her work hours to anyone.  (Doc. # 43-5 at 168–69, 56; 43-1 at ¶ 7; 43-2 at 136.)  That Mr. Correa may have conducted some mandatory meetings on behalf of AIL is insufficient to support a finding that Plaintiff was AIL's employee.

Further, Plaintiff's conclusory reference to E-App as a system used by AIL to track her work day is unsupported and unconvincing.  Mr. Correa testified that E-App is "electronic software" created "for the completion of applications . . . that have to be approved by the state."  (Doc. # 75-1 at 21–22.)  If an agent does not effectuate a sale or complete an application, E-App will not be used.  (Doc. # 75-2 at 140.)  Plaintiff presents no evidence to contradict this testimony, nor does she present any evidentiary support for her assertion that E-App was a system requiring her to "punch in and out." (Doc. # 49 at 7.)

Moreover, that AIL dictated the format of scripts to be used when pitching to potential AIL customers or shared a "leads" list with Plaintiff does not demonstrate a sufficient amount of control, as a matter of law, to make Plaintiff AIL's statutory

---

[1] Although it appears that Plaintiff chose to sell only AIL products, nothing in the record supports that she was *required* to do so.  (Id. at 286–87.)

employee. *See Oestman v. Nat'l Farmers Union Ins. Co.*, 958 F.2d 303, 306 (10th Cir. 1992) (oversight of legal compliance to avoid liability for misstatement or misrepresentations is not control); *see also Shaw v. Am. Income Life Ins. Co.*, No. 1:11-CV-123, 2012 WL 400703, at *9 (N.D. Ind. Feb. 7, 2012) (citing *U.S.E.E.O.C. v. Catholic Knights Ins. Soc.*, 915 F. Supp. 25, 29 (N.D. Ill. 1996) for the proposition that requiring agents to use company form letters was not a strong showing of control). Indeed, AIL maintains that it was not involved with Plaintiff's pitching methods or daily schedule (Doc. # 43-1 at ¶ 12), and Plaintiff presents no evidence to dispute this.

2. <u>Bonuses, Benefits, and Stock Options</u>

Second, Plaintiff's contention that she was not paid through commissions — as evidenced, she argues, by her receipt of bonuses, benefits, and stock options — is unsupported. At her deposition, Plaintiff testified that she was paid through sales commission. (Doc. # 43-5 at 49, 306–07.) She conceded that she was never paid hourly or salaried. She acknowledged that she bore the risks and rewards of her own efforts, and there was no cap on how much commission she could earn. (*Id.*) Plaintiff also testified that AIL gave her the option to purchase stock, not that she received stock as an employment benefit. (Doc. # 43-5 at 49.)

Plaintiff has submitted exhibits suggesting that AIL had an incentive-based bonus scheme. Namely, if Plaintiff made a certain number of sales or earned a certain amount of commission, she would be entitled to a bonus or some other reward. (Doc. ## 49-2, 49-3, 49-4.) Nothing in these documents, however, suggests that Plaintiff was actually subject to this scheme. And even if she was, maintaining some quality-control

incentives, oversight, or minimum performance requirements does not demonstrate that AIL controlled the means and manner of Plaintiff's daily work, nor does it convert Plaintiff into a statutory employee of AIL. Indeed, AIL's Senior Vice President maintains that AIL did not provide Plaintiff with paid vacation, sick days, or paid holidays. (Doc. # 43-1 at ¶ 11.) Moreover, although Plaintiff could purchase her own life insurance through AIL, Plaintiff was not eligible, by virtue of her employment with the company, to receive employee health insurance, retirement, worker's compensation, or unemployment benefits. (Doc. ## 43-1 at ¶¶ 3, 11; 43-5 at 304.)

### 3. Training and Licensure

Last, to obtain her licensure as an insurance agent in Colorado, it is undisputed that Plaintiff had to take various preparatory classes and pass a state examination. (Doc. # 43-5 at 35–36.) Neither AIL nor Xavier was involved in Plaintiff's training nor did they pay for her state test. (Doc. # 43-1 at ¶¶ 9, 18.) Although Plaintiff testified that AIL reimbursed her for the costs of her state examination (Doc. # 43-5 at 35) and argues that AIL has paid for her to attend various trainings, she presents no evidence of these payments[2] and AIL has submitted a sworn affidavit by its Senior Vice President stating otherwise. (Doc. # 43-1 at ¶ 9.)

---

[2] Plaintiff attached two pieces of evidence to support her contention the AIL paid for her trainings: one is a receipt from her stay at the Marriot in Allen, Texas, and the other is an itinerary for a flight to Dallas, Texas. (Doc. ## 49-5, 15.) Neither receipt contains any reference to AIL, and it is entirely unclear from the face of the documents who paid for the hotel or the flight.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Defendants have adequately demonstrated the absence of a genuine dispute of material fact with respect to (1) Plaintiff's status as an independently-contracted agent of AIL and (2) the complete lack of any employment relationship between Plaintiff and Xavier.  Further, Plaintiff has not set forth specific facts from which a rational trier of fact could find otherwise, and summary judgment is therefore warranted on all of her claims.  Accordingly, the Court GRANTS Defendants' Motions for Summary Judgment (Doc. ## 43, 46) and DISMISSES this case WITH PREJUDICE.

Date: October 31, 2017                              BY THE COURT:

*Christine M Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge